IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARVIN BLUNT,
        Petitioner,

v.                                                  Civil Action No. 2:10cv73
                                                               (JUDGE MAXWELL)

KUMA J. DeBOO, Warden,
        Respondent.

## REPORT AND RECOMMENDATION

On June 7, 2010, the *pro se* petitioner, Marvin Blunt, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is an inmate at the Gilmer Federal Correctional Institution in Glenville, West Virginia. In the petition, the petitioner challenges the U.S. Parole Commission's decision to deny him parole and conduct a reconsideration hearing in January of 2013. The petitioner paid the $5.00 filing fee on June 17, 2010. On June 18, 2010, the undersigned conducted a preliminary review of this matter and determined that summary dismissal of the same was not warranted. Accordingly, an Order to Show Cause was entered. On July 16, 2010, the respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. On July 21, 210, Roseboro Notice was issued, and on October 28, 2005 the petitioner filed a Response in Opposition and his own Motion for Summary Judgment. On September 1, 2010, the respondent filed a Reply to the petitioner's Cross-Motion for Summary Judgment. On September 13, 2010, the respondent filed objections and a Motion to Strike the respondent's Reply.

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2, is ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

On November 28, 1990, the Superior Court sentenced the petitioner to consecutive 15 years to life prison terms for two counts of armed robbery, a concurrent 15 year to life term for burglary II while armed, and a consecutive 5-year prison term for bail jumping. (Doc. 9-1, pp. 2-3). On September 18, 1990, the petitioner was sentenced by the Superior Court to a concurrent 3 to 9 year prison term for attempted distribution of cocaine. (Doc. 9-1, p. 4). The petitioner's initial parole eligibility date is October 16, 2010. (Doc. 9-1, p. 8).

A DC Board of Parole Guidelines Prehearing Assessment was prepared on January 26, 2010. The report recounts the petitioner's offenses as follows:

> On 9-8-88, the victim was approached by two mail suspects. One of them produced a knife and forced his way into her residence. Once inside, they removed property valued at $3255. The victim was held for 20 minutes before the suspects departed. The victim reviewed a photo spread on 9-8-8 and picked out the subject, 80% sure. A line-up conducted on 10-28-88 and she positively identified the subject as the assailant who forced his way into her home at knife point. Subject pled not guilty.
>
> On 10-6-88, the victim was walking on 400 block of C Street and the subject exited from a basement stairwell. He stopped and forced her to back up against a parked car. He drew an icepick and stabbed her through the arm and breast. She fell between the parked cars. He snatched her purse and returned to the basement apartment. She began screaming and he fled. A passerby provided assistance. On 10-20-1988, the victim positively identified the subject as her assailant. He was arressted on 10-10-88 He pled not guilty.
>
> On 5-5-89, he failed to appear in court for a pre-trial status hearing.
>
> On 11-28-1990, subject was convicted by a jury of 2 counts of Armed Robbery, Burglary II and Bail Reform Act. He was sentenced to 30 years to Life with 1-5 years consecutive in docket number F13465-88 and F3895-90.
>
> On 3-20-90, subject engaged in distribution of cocaine, There is not a PSI for this docket, F38 63-90. (Requested from the BOP). On 12-18-90, he was sentenced to 3-9 years, concurrent.

2

The pre-hearing assessment also assigns the petitioner a Total Salient Factor Score of 5[1], Degree of Risk Points of 2, Type of Risk Points of 1, Negative Institutional Behavior Points of 0, Program Achievements Points of -1, for an Initial Point Assignment Grid Score of 2. (Doc. 9-1, pp. 11-12). Accordingly, the pre-hearing assessment determined that the petitioner, "now age 42, is appearing for his initial hearing on a 31 year to Life term imposed in 1990 for 2 counts of Armed Robbery, BRA, and Distribution of Cocaine. His parole eligibility date is 10-16-2010. His grid score is 2 which suggests parole be granted at the initial hearing with the highest level of supervision. [However] [a] record parole decision is not recommended due to the lack of complete information about the victims' injuries and the cocaine distribution conviction. Additionally, subject pled not guilty to these crimes. An in-person hearing is necessary to determine his risk to the community." (Doc. 9-1 p. 12).

The petitioner's initial parole hearing was conducted on February 18, 2010, via video conferencing. During the hearing, the petitioner was asked if he had any misconduct while he was in the DC Department of Corrections or in the contract facility in Ohio, and he replied that he was infraction free. However, the hearing examiner obtained the petitioner's DC file and determined that there was one infraction that occurred in 1991, while the petitioner was at Lorton.[2] Accordingly

---

[1] The salient factor score is determined by the following factors: (1) the number of prior convictions/adjudications; (2) the number of prior commitments of more than 30 days; (3) the inmate's age at commencement of the current offense/prior commitment of more than 30 days; (4) the length of recent commitment free period; (5) whether the inmate was on probation/parole/confinement/escape status at the time of the current offense; and (6) whether the inmate was 41 years of age or more at the commencement of the current offense.

[2] The full name of that facility was the D.C. Correctional Facility at Lorton. The Balanced Budget Act of 1997 required D.C. officials to begin transferring prisoners as soon as possible and to close Lorton within four years, The prison closed in 2001, and D.C. inmates are now housed in BOP facilities.

to the hearing summary, on July 31, 1991, staff witnessed the petitioner and several other inmates attacking another inmate in the tier. The petitioner appeared before the Adjustment Board on that same date and denied that he committed the prohibited act. The Board found him guilty and imposed 14 days of administrative segregation, 30 days suspension of canteen, telephone and visits. When questioned by the parole examiner at the hearing, the petitioner denied the incident and stated that he had no recollection of it. However, he did conform that his DC-DC-Number was listed on the report and that he was housed in Lorton at the time of the incident. The parole examiner found that the petitioner had violated the rules of the institution as indicated by the violation. (Doc. 9-1, p. 16). Accordingly, the parole examiner assigned the petitioner Negative Institutional Behavior Points at Initial Consideration of +1, bringing his Grid Score to a 3. The parole examiner found that this Grid Score indicated that parole be denied at the Initial Hearing. Moreover, although the rehearing guidelines indicated that the petitioner's next parole hearing should be scheduled within 12 months, the parole examiner found that a departure from the guidelines was warranted. In making this determination, the parole examiner noted as follows:

> A departure from these guidelines is found warranted because the Commission finds that you are a more serious parole risk than your point score and there is a reasonable probability that you would not obey the law if released and your release would endanger public safety. Specifically, you stand convicted of four separate crimes that occurred over a 2 year span. Two of the crimes were for Armed Robbery where the victims were assaulted. In one of the assaults you held the victim in her apartment at knifepoint against her will before leaving with her property. In the second instance you attacked a woman on the street and stabbed her with an ice pick twice before snatching her purse and running away. In both of these incidents you exhibited unusual cruelty to these victims. Additionally, you became a fugitive from the Court System in May of 1989 and continued to engage in criminal activity as exhibited by your 3/30/1990 arrest and subsequent conviction for Distribution of Cocaine. Your ongoing criminal behavior during the course of a 2 year span indicates that you are a more serious risk if released on parole at this

4

time.

(D0c. 9-1, p. 18).

Accordingly, the parole examiner recommended that parole be denied. In addition, she recommended that the petitioner be continued for a rehearing in February, 2013. The Commission accepted the recommendation of the hearing examiner and, by notice of action dated March 20, 2010, informed the petitioner that he was denied parole and continued to a rehearing in February 2013. (Doc. 9-1, p. 20).

## II. CLAIMS OF PETITION

1. The Commission misapplied the 1987 guidelines of the D.C. Board of Parole when it added a point to his guideline score for negative institutional behavior.

2. The Commission acted outside its authority when it scheduled a parole rehearing date of 2013 instead of the prescribed 12 month period.

## III. RESPONSE

In support of his Motion to Dismiss or, in the alternative Motion for summary judgment, the respond argues:

1. The parole commission did not misapply the D.C. Board of Parole 1987 Guidelines.

2. The Parole Commission's decision to continue the petitioner's rehearing was appropriate.

## IV. STANDARD OF REVIEW

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80 91977).  So too, has the Fourth Circuit Court of Appeals.  Maynard v. Dixon , 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.  Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any

7

permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986)

## V. ANALYSIS

At one time, there existed a "Board of Parole....for the penal and correctional institutions of the District of Columbia," D.C. Code § 24-401.01(a) (2001), which determined an offender's suitability for parole. On August 5, 1998, the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir.1998). Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2). The Revitalization Act provided that the Parole Commission was to follow the parole law and regulations of the District of Columbia, but also granted the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code Ann. § 24-131(a)(1); Simmons v. Shearin, 295 F.Supp.2d 599, 602 (D.Md.2003).

Subsequently, the Commission established amendments and revisions to the 1987 guidelines of the D.C. Board of Parole, which had remained in effect until August 5, 1998. See 28 C.F.R. §2.70, et. seq. On July 21, 1998, the Commission's amended version of the parole rules and guidelines were published in the Federal Register at 63 FR 39172 and are found at 28 C.F.R. §2.70 et. seq. The Commission's decision-making guidelines are found at 28 C.F.R. §2.80.

### A. Ground One

The petitioner's first claim is that the Commission erred when it used his 1991 institutional infraction in its decision to deny him parole. More specifically, the petitioner argues that the infraction occurred outside the three-year time limit required by the regulations. The petitioner appears to be referring to action taken by the Board in 1991 which "adopted a policy guideline ('1991 Policy Guideline') to define terms used in the appendices" to the 1987 Regulations. Sellmon v. Reilly, 551 F.Supp.2d 66, (D.D.C. 2008) The 1991 Policy Guideline defined "negative institutional behavior" to **exclude** consideration of an infraction (other than murder, manslaughter, kidnaping, armed robbery, or first degree burglary) **occurring more than three years before the initial parole hearing**. Id.. Accordingly, if the Commission were bound by this Policy Guideline, the petitioner's claim would have merit inasmuch as the disciplinary infraction at issue was committed on July 3, 1991. However, the Commission's rules provide that the Commission shall use the former Board's policy guideline in effect at the time of the prisoner's offense. See 28 C.F.R. § 2.80(o)(4). Here, the petitioner's offenses[3] occurred prior to the effective date of the Policy Guideline, and therefore, he is not entitled to the three-year limitation on negative institutional behavior.[4]

### B. Ground Two

As his second ground for relief, the petitioner alleges that the Commission erred when it departed from the regulatory guidelines for the reason that he had "not served a sufficient prison

---

[3] I.e., the crimes for which he was incarcerated

[4] "For prisoners who committed their crimes while this policy guidelines was in effect (from December 16, 1991 to October 23, 1995), the Commission will use the definitions given in the 1991 policy guideline for scoring negative behavior..." (Doc. 9-2, p. 3).

term to be accountable for the crime and because his release would depreciate the seriousness of his offense." (Doc. 1, p. 5). It would appear that the petitioner is challenging the Commission's decision to continue him for rehearing in February of 2013, after an additional 36 months of service, as opposed to scheduling him for a rehearing in 12 months.

In fact, the Commission did depart from the guidelines and extended his date for rehearing by 24 months. However, it did not do so for the reasons alleged by the petitioner.[5] A reading on the Notice of Action, clearly indicates that the Commission departed from the guidelines after finding that the petitioner "was a more serious parole risk that [his] point score and there is a reasonable probability that [he] would not obey the law if released and [his] release would endanger public safety." (Doc. 9-1, p. 20).

D.C. Code § 24-404, formerly § 24-204 provides as follows:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

The Commission's stated reason for departing from the guidelines and continuing the date for his rehearing for a three-year period is consistent with this statute and the Commission's rules. 28 C.F.R. § 2.80(o) provides that the Commission will depart from the Board's guidelines if it concludes that the petitioner's release would pose a serious risk to the public safety. Clearly, the

---

[5]As the Commission conceded in the 2009 rule publication, such reasons would not be used for departing from the former Board's guidelines on parole release decisions or setting the dates of rehearings. (Doc. 9-2, p. 3) ("as a result of the Sellmon litigation, the Commission will not depart from the guidelines for the reason that the prisoner has not served a sufficient prison term to be 'accountable' for the crime, or because the prisoner's release would depreciate the seriousness of the offense").

10

Commission's stated reasons for departing from the guidelines provide a rational basis for their action.

Parole actions are subject to review only to determine whether the Parole Commission violated the Constitution, its enabling statute, or parole regulations. Garcia v. Neagle, 660 F.2d 983 (4th Cir. 1981). For the reasons stated above, the decision to deny the petitioner parole and continue him for rehearing in three years does not constitute any such violation.

## VI. MISCELLANEOUS MOTION

On August 20, 2010, the petitioner filed a Response in Opposition to the respondent's Motion to Dismiss or, in the Alternative Motion for Summary Judge and filed his own Motion for Summary Judgment with exhibits. On September 1, 2010, the respondent replied to the petitioner's cross-motion for summary judgment. On September 13, 2010, the petitioner filed objections and a Motion to Strike the response filed by the respondent on September 1st. In support of his motion, the petitioner contends that the "rules of jurisprudence mandate that the petitioner in a civil action be afforded the final opportunity to present arguments in a civil proceeding. There is no allowance for respondent's reply to petitioner's response [ ] unless the respondent receives approval 'by leave of court." The petitioner indicates that this language is found in 28 U.S.C. § 2243. However, it does not. The petitioner opened the door for the respondent by filing his own motion for summary judgment. Had he simply replied to the respondent's motion, no further response from the respondent would have been permitted. Clearly, under Rule 56 of the Federal Rules of Civil Procedure, the respondent was entitled to file a response to the petitioner's motion for summary judgment.

## IV. RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 8) be **GRANTED**, the petitioner's Motion for Summary Judgment (Doc. 15) be **DENIED**, the petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**, and the petitioner's Motion to Strike (Doc. 18) be **DENIED**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: October 4, 2010

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE