**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**MARVIN BLUNT,**

    Petitioner,

v.                                                  **CIVIL ACTION NO. 2:10-CV-73**
                                                                                                      (BAILEY)

**KUMA J. DEBOO, Warden, et al.,**

    Respondents.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

I.     Introduction

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge David J. Joel. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Joel for submission of a proposed report and a recommendation ("R & R"). Magistrate Judge Joel filed his R & R on October 1, 2010 [Doc. 19]. Therein, the magistrate judge recommends that this Court deny the § 2241 petition.

Pursuant to 28 U.S.C. § 636 (b) (1) (c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1);

1

***Snyder v. Ridenour***, 889 F.2d 1363, 1366 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91, 94 (4th Cir. 1984).

This Court notes that, after a brief extension [Doc. 23], the petitioner did file timely objections to the R&R on October 28, 2010 [Doc. 26]. Accordingly, this Court will review the portions of the R&R to which objections were filed under a *de novo* standard of review. The remaining portions will be reviewed for clear error.

II.     Factual and Procedural History

The petitioner challenges the United States Parole Commission's ("Commission") decision to deny him parole and to conduct a reconsideration hearing in February of 2013. The petitioner is currently serving various sentences which were imposed on September 18, 1990, including consecutive 15 year to life terms for two counts of armed robbery, a concurrent 15 year to life term for burglary II while armed, and a consecutive 5-year term for bail jumping. While on bail, this pattern of criminal conduct continued, and the petitioner earned himself an additional 3 to 9 year term for attempted distribution of cocaine. The petitioner's initial parole eligibility date was October 16, 2010. The parole hearing was conducted on February 18, 2010. Parole was denied.

The petitioner's pre-hearing assessment determined that the petitioner's Initial Point Assignment Grid Score ("Grid Score") was 2, which would, in a vacuum, grant parole with the highest level of supervision. This number, however, is moot, because the petitioner was determined to have a Grid Score of 3 at the actual hearing. An additional Negative Institutional Behavior Point ("NIB Point") was assessed during the initial parole hearing after a decision was rendered that the petitioner was involved in an infraction that occurred in

1991, while housed in the D.C. Correctional Facility at Lorton. This NIB Point was not initially discovered in the pre-hearing assessment. The parole examiner found that the Grid Score of 3 indicated that parole be denied.

At the conclusion of the parole hearing, the parole examiner further found that a departure was warranted to conduct the petitioner's next parole hearing in 2013, as opposed to the guideline rehearing within twelve months. In making this determination, the parole examiner stated:

> A departure from these guidelines is found warranted because the Commission finds that you are a more serious parole risk than your point score and there is a reasonable probability that you would not obey the law if released and your release would endanger public safety. Specifically, you stand convicted of four separate crimes that occurred over a 2 year span. Two of the crimes were for Armed Robbery where the victims were assaulted. In one of the assaults you held the victim in her apartment at knifepoint against her will before leaving with her property. In the second instance you attacked a woman on the street and stabbed her with an ice pick twice before snatching her purse and running away. In both of these incidents you exhibited unusual cruelty to these victims. Additionally, you became a fugitive from the Court System in May of 1989 and continued to engage in criminal activity as exhibited by your 3/30/1990 arrest and subsequent conviction for Distribution of Cocaine. Your ongoing criminal behavior during the course of a 2 year span indicates that you are a more serious risk if released on parole at this time.

The parole Commission accepted the recommendation of the examiner, informed the petitioner that he was denied parole, and continued the rehearing to February of 2013. The petitioner challenges the method of calculation of his Grid Score, the applicable parole

3

guidelines implemented, and the departure for his parole rehearing.

III. Applicable Law

The Constitution declares that "No . . . ex post facto Law shall be passed." A "retroactively applied parole . . . guideline or guideline violates" this prohibition "if it 'creates a significant risk of prolonging [an inmate's] incarceration.'" **Fletcher v. Reilly**, 433 F.3d 867, 870 (D.C. Cir. 2006) (quoting **Garner v. Jones**, 529 U.S. 244, 251 (2000)). Typically, a prisoner must demonstrate that the retroactive implementation of a new rule of law will result in a longer period of incarceration than under the earlier law. See **Id**. "In general, ex post facto claims require a comparison of the challenged scheme to the one in place when the prisoner committed his crimes. See **Garner**, 529 U.S. at 247." **Phillips v. Fulwood**, 2010 WL 3063754 (C.A. D.C. August 6, 2010). The relevant guidelines addressed in this case are the 1987 and 1991 parole guidelines.[1]

IV. Discussion

A.

As discussed above, to implicate an ex post facto challenge, some new rule having been imposed upon the petitioner must result in a longer incarceration than the former rule. The petitioner fails to show this crucial nexus. In his case, no new rule has been imposed. Rather, the parole board's guidance in making its determination to deny parole was sought from the very guidelines in place at the time the underlying crimes were committed, i.e. the 1987 guidelines. Interestingly, the petitioner seeks application of a newer set of guidelines,

---

[1] A thorough recitation of the historical underpinnings of the parole guidelines can be found in the magistrate judge's Report and Recommendation [Doc. 19].

4

i.e. the 1991 guidelines. Such measures simply do not implicate ex post facto; accordingly, the petitioner's argument fails on that ground.

B.

Second, the petitioner urges this Court to adopt some convoluted new theory in which he recognizes arguing for application of the 1991 guidelines would be futile; however, he simultaneously seeks application of the 1991 guidelines to define the 1987 guidelines.[2] In essence, the petitioner concedes the 1987 guidelines apply, but asks this Court to retroactively apply the guidance provided in the 1991 guidelines, claiming that the legislative intent existed at the time the 1987 guidelines went into effect, and which the 1991 guidelines later sought to clarify. To the extent that the purpose of the 1991 guidelines was simply to help clarify the 1987 guidelines, this Court finds the petitioner's argument makes a distinction without a difference.

This Court agrees with the petitioner that such an application would potentially benefit him;[3] however, such application is contrary to law. *See **Sellmon v. Reilly***, 551 F.Supp.2d 66, 85 (D. D.C. 2008) (holding that certain petitioners could not rely on the 1991 guidelines because their offenses were committed before 1991). Specifically, only "[f]or prisoners who committed their crimes while this policy guideline was in effect (from

---

[2] The 1991 Guidelines were adopted to define terms used in the appendices to the 1987 Guidelines. *See **Sellmon v. Reilly***, 551 F.Supp.2d 66 (D. D.C. 2008).

[3] Relevant to the petitioner's claim, the 1991 guideline helps defines the term "negative institutional behavior," which favorable definition would exclude the petitioner's prison infraction from consideration because it occurred more than three years prior to the initial parole hearing. Thus, the extra NIB Point would not have been assessed to his Grid Score.

December 16, 1991 to October 23, 1995), the Commission will use the definitions given in [that] guideline for scoring negative behavior . . ..." Rules & Regulations, 74 Fed. Reg. 58540, 58541-42 (Dep't Justice Nov. 13, 2009). The petitioner's crimes were committed in 1988 - 1990; accordingly, the 1991 guidelines simply do not apply to him.

C.

Next, the petitioner reasserts that the Commission erred by departing from the regulatory guidelines when it continued his rehearing to February of 2013, instead of within twelve months. This Court finds that the Commission was within its discretion to do so. The Commission's 2009 rule publication looked to the **Sellmon** litigation for guidance on this issue: "[a]s a result of the [that] litigation, the Commission will not depart from the guidelines for the reason that the prisoner has not served a sufficient prison term to be 'accountable' for the crime, or because the prisoner's release would depreciate the seriousness of the offense." See 74 Fed. Reg. 58540. While conceding misapplication of the above to certain prisoners, the **Sellmon** litigation re-affirmed application of 28 C.F.R. § 2.80(o) in those cases where the Commission departed from the guidelines on the basis that the prisoner's release would pose a "serious risk" to the public safety. *See also* ***Phillips v. Fulwood***, 2010 WL 3063754 (C.A. D.C. August 6, 2010) (finding no ex post facto violation where Commission considered the "serious risk to society" factor to depart from its guidelines).

In this case, the Commission departed, stating that the petitioner "was a more serious parole risk than [his] point score [indicates] and there is a reasonable probability that [he] would not obey the law if released and [his] release would endanger public safety."

6

This Court finds the Commission's findings to be nearly on point with the public safety concerns codified in § 2.80(o).  In addition to the Commission's sound reasoning for departure, this Court further finds that its reasoning was not a pretext for departing for the reason that the petitioner had not served "a sufficient term to be 'accountable' for his crime" or that his release would "depreciate the seriousness of the offense."  74 Fed. Reg. 58540. Specifically, the parole examiner cited that the petitioner "became a fugitive" after jumping bail on the crimes for which he seeks parole, and that the petitioner "continued to engage in criminal activity," i.e. his subsequent conviction for Distribution of Cocaine.  In concluding that the petitioner is a more serious risk than his Grid Score indicated, the examiner specifically noted the petitioner's "ongoing criminal behavior during the course of a 2 year span . . .."  Accordingly, this Court finds the Commission has shown good cause to depart.

D.

Finally, in his Objections, the petitioner asserts that the Commission engaged in an impermissible "double-counting" when it departed based upon "prior convictions, all of which occurred over twenty years ago . . .."  In support of this argument, the petitioner quotes **Maddox v. United States Parole Comm'n**, 821 F.2d 997, 1001 (5th Cir. 1987), which states:

> "'The Parole Commission . . . cannot use aggravating factors to continue a prisoner beyond the guidelines when such factors were used initially to place the prisoner in a particular severity category.'  This amounts to impermissible double-counting.  Likewise, double-counting occurs when the Parole Commission uses the same information that it used to establish a prisoner's

salient factor score to support its decision outside the guidelines."

(quoting **Romano v. Baer**, 805 F.2d 268, 271 (7th Cir. 1986).

Ironically, in **Maddox**, the appellate court affirmed the district's ruling that the Commission's departure did not amount to double-counting where it based both the departure and the Grid Score upon the same amount of drugs involved in federal and state convictions. **Id**. at 997.

"[T]o determine whether double-counting has occurred, the crucial comparison is between the factors used to place a defendant in a severity category and the factors used to continue a prisoner beyond the guidelines . . .. Thus, if the Parole Commission failed to take note of a particular element of the conviction in determining a severity category, it would not abuse its discretion by considering that element as an aggravating factor." **Id**. (quoting **Romano**, 805 F.2d at 271).

Likewise, in **Stroud v. United States Parole Comm'n**, 668 F.2d 843, 847 (5th Cir. 1982), the court held that the Commission does not double-count when it focuses on the number of a prisoner's prior convictions to establish his Grid Score but considers the nature of those convictions to support its decision to depart. Such is also the case here. While the bail-jumping and Distribution of Cocaine were included in the prior convictions, in deciding to depart, the examiner focused on the short time-frame in which this "ongoing criminal behavior" occurred. Similarly, the examiner stressed the "unusual cruelty" imposed upon the victims of the two armed robberies, noting that one was held at knifepoint and the other stabber twice with an ice pick. In light of the above, this Court finds that no impermissible double-counting occurred.

V. Conclusion

Upon thorough review of the record and the magistrate judge's R & R, it is the opinion of this Court that the recommendations of Magistrate Judge Joel **[Doc. 19]** should be, and is, hereby **ORDERED ADOPTED**. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petitioner's § 2241 Application for Habeas Corpus **[Doc. 1]**. This Court **GRANTS** the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment **[Doc. 8]** and **DENIES** the petitioner's cross Motion for Summary Judgment **[Doc. 15]**. Accordingly, this action is hereby **ORDERED STRICKEN** from the active docket of this Court. As a final matter, this Court hereby **DENIES** the petitioner's Motion to Strike **[Doc. 18]**. The Clerk shall enter judgment for the Respondents.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and to mail a copy to the *pro se* petitioner.

**DATED**: January 19, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE